# Exhibit A

MEMORANDUM OF AGREEMENT

This Agreement is made by and between the undersigned phonograph record companies (the "Signatory Record Companies"), including companies that have authorized the Signatory Record Companies to act on their behalf, and/or companies for whom the Signatory Companies have assumed responsibility under collective bargaining agreements, the American Federation of Musicians of the United States and Canada, AFL-CIO-CLC ("AFM"), the American Federation of Television and Radio Artists, AFL-CIO ("AFTRA").

The purpose of this Agreement is to memorialize the understandings reached among the parties in connection with their joint legislative efforts to achieve the enactment of digital performance rights legislation which would: (1) create a digital performance right in sound recordings; (2) provide that certain subscription digital transmissions of sound recordings would be subject to statutory licensing; and (3) direct that the resulting statutory license fees would be divided pursuant to the following formula: 50% to the copyright owner, 2 1/2% to nonfeatured musicians who perform on sound recordings, 2 1/2% to nonfeatured vocalists who perform on sound recordings, and 45% to featured musicians and vocalists who perform on sound recordings.

At the culmination of arms length negotiations, and in consideration of the mutual promises set forth below and in the accompanying cover letter, AFM, AFTRA and the Signatory Record Companies have agreed as follows:

1. AFM and AFTRA shall use their joint best efforts, coordinated with Recording Industry Association of America, to

APPENDIX A

- 2 -

achieve the enactment of legislation amending the Copyright Act of 1976 as described above.

2. Each Signatory Record Company agrees that 1% of all receipts (as defined in the legislative history) it collects as a result of the amendment of the Copyright Act of 1976 to provide copyright owners with the exclusive right, not limited by statutory or compulsory licensing, to publicly perform sound recordings by means of a digital transmission will be allocated to musicians and vocalists who perform on said sound recordings. Of that 1%, 0.5% will be allocated to AFM (or to any entity, such as the Special Payments Fund, designated in writing by AFM) for distribution to musicians who perform on said sound recordings whether or not such musicians are members of AFM in accordance with a formula to be determined solely by the AFM. The remaining 0.5% will be allocated to AFTRA (or to any entity designated in writing by AFTRA) for distribution to vocalists who perform on said sound recordings, whether or not such vocalists are members of AFTRA, in accordance with a formula to be determined solely by AFTRA. The reasonable administrative costs of the distribution incurred by AFM, AFTRA or their designees may be paid from the receipts received from the Signatory Record Companies.

3. Payments to AFM, AFTRA or their designees shall be made within forty-five (45) days after the end of each calendar half-year (i.e., within forty-five (45) days after June 30 and December 31 of each year). Each payment shall be accompanied by a statement, certified by the Treasurer, Controller, or other authorized officer or representative of the Signatory Record

Company making the payment, containing such information as reasonably may be required to ascertain the correctness of the payment made. If such payments are not made when due, the payments shall bear interest at the rate of six per cent (6%) per annum from the date when such payment was due. The recordkeeping and auditing provisions of the Phonograph Record Manufacturers' Special Payments Fund Agreement effective February 1, 1993, and as those provisions may be amended hereafter, are incorporated in full into this Agreement.

4. The Signatory Record Companies' payment and recordkeeping obligations under this Agreement as described in Paragraphs 2 and 3 above shall begin upon the effective date of the law creating a digital performance right in sound recordings, and shall remain in full force and effect for a period of ten (10) years from that date.

5. Funds to which musicians and vocalists are entitled pursuant to the creation of a digital performance right in sound recordings, either as a result of the musicians' and vocalists' statutorily established share of statutory license fees, or pursuant to this Agreement, shall be inalienable.

6. The Signatory Record Companies, AFM and AFTRA jointly shall take steps to ensure that the legislative history of the digital performance rights legislation reflects the fact that this Agreement has been entered into between AFM, AFTRA and the Signatory Record Companies, that an essential element of this Agreement is the provision that musicians and vocalists will share in the receipts resulting from the newly established

- 4 -

exclusive digital performance right, and that this Agreement is a prerequisite for AFM's and AFTRA's active support for enactment of the legislation.

7. If the pending digital performance rights legislation does not become law, this Agreement shall be null and void. In addition, if the pending digital performance rights legislation does not become law, the parties reserve all rights with respect to any future legislative efforts.

8. This Agreement shall be binding upon AFM and its agents, representatives and successors, AFTRA and its agents, representatives and successors, and the Signatory Record Companies and their respective agents, representatives, affiliates, successors and assigns. With respect to the Signatory Record Companies and without limiting the generality of the foregoing, "affiliate" includes any subsidiary, any entity that is controlled by or managed by a Signatory Record Company, any entity engaged in the recording business in which the Signatory Record Company holds any equity interest, and any recording entity that a Signatory Record Company or other affiliate during the term of this Agreement acquires, owns, controls or manages; and "successor" includes the transferee in any transaction in which a Signatory Record Company and or affiliate transfers or disposes of its operations and/or assets to any entity for operation as or as part of a recording entity.

The Signatory Record Companies agree that they will not sell, convey, assign or otherwise transfer a recording business, or exclusive rights under the Copyright Act to publicly perform

Ca

- 5 -

specific recordings by means of a digital transmission, to any buyer unless the buyer becomes a signatory to this Agreement.

9. The parties agree that this Memorandum of Agreement is an agreement between labor organizations and employers within the meaning of Section 301 of the Labor Management Relations Act of 1947, and shall be enforceable under that section.

_____                    _____
                                                   American Federation of
                                                   Musicians of the United
                                                      States and Canada


_____                    _____
*[signature: Clemon W. Williams]*                  American Federation of
CLEMON W. WILLIAMS FOR                                Television and Radio Artists
BMG MUSIC


_____


_____

_____

_____

_____

APPROVED:

_____
Recording Industry Association
of America

specific recordings by means of a digital transmission, to any buyer unless the buyer becomes a signatory to this Agreement.

9. The parties agree that this Memorandum of Agreement is an agreement between labor organizations and employers within the meaning of Section 301 of the Labor Management Relations Act of 1947, and shall be enforceable under that section.

_____  
  
_____  
American Federation of  
Musicians of the United  
  States and Canada

_____  
  
_____  
American Federation of  
  Television and Radio Artists

_____

_____

_____  
Fred Wistow, Esq.  
Warner Music Group

- 5 -

specific recordings by means of a digital transmission, to any buyer unless the buyer becomes a signatory to this Agreement.

9. The parties agree that this Memorandum of Agreement is an agreement between labor organizations and employers within the meaning of Section 301 of the Labor Management Relations Act of 1947, and shall be enforceable under that section.

_____
SONY MUSIC ENTERTAINMENT INC.

_____
American Federation of
Musicians of the United
States and Canada

_____

_____
American Federation of
Television and Radio Artists

_____

_____

_____

_____

specific recordings by means of a digital transmission, to any buyer unless the buyer becomes a signatory to this Agreement.

9. The parties agree that this Memorandum of Agreement is an agreement between labor organizations and employers within the meaning of Section 301 of the Labor Management Relations Act of 1947, and shall be enforceable under that section.

_____
MCA Records Inc.

_____
American Federation of
Musicians of the United
   States and Canada

_____  _____
                                American Federation of
                                   Television and Radio Artists

CAPITOL RECORDS, INC.

_[signature]_

APPROVED:

_[signature]_
Recording Industry Association
of America

specific recordings by means of a digital transmission, to any buyer unless the buyer becomes a signatory to this Agreement.

9.  The parties agree that this Memorandum of Agreement is an agreement between labor organizations and employers within the meaning of Section 301 of the Labor Management Relations Act of 1947, and shall be enforceable under that section.

_POLYGRAM HOLDING, INC._
and
_POLYGRAM HOLDING, INC._

_____
American Federation of
Musicians of the United
States and Canada

_____
American Federation of
Television and Radio Artists